UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERKEN PAVING INC.,

    Plaintiff,

v.                                                  CASE NO. 10-cv-14905

LASALLE GROUP INC.,              HON. MARIANNE O. BATTANI

    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT
LASALLE'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Before the Court is Defendant LaSalle Group Incorporated's ("LaSalle") Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. 56(a). (Doc. 22). Plaintiff Gerken brought a breach of contract action against Defendant pursuant to Michigan common law after Defendant refused to agree to a price increase. Defendant motioned for summary judgment and the Court heard oral argument on July 19, 2012. For the reasons that follow, the Court **GRANTS** Defendant's motion.

**II. STATEMENT OF FACTS**

    1. The Contract

Defendant LaSalle Group Inc., a contractor, entered into a contract with non-party Menards ("Owner"), a home improvement store chain, to build a store location in Oregon, Ohio. On July 17, 2007, Defendant entered into a fixed price subcontract ("Project") with Plaintiff Gerken Paving Inc. for a price of $545,705.00. (Doc. 24 p. 3). Plaintiff was required to pave the access roads and parking lots for the project, including

an outlot on Curtis Road, and complete items on a punchlist generated by LaSalle. (Id. at 2). It was not responsible for grading (evening the surface of the lot) or laying the stone base on the lots, and could not complete the asphalt paving until after the grading work was completed. However, Plaintiff was responsible for verifying the grades and approving the stone base and catch basins before it began paving. (Doc. 22 Ex. A p. 2a). The contract specified that the paving was to be completed in accordance with Ohio Department of Transportation ("ODOT") guidelines. (Id.). The ODOT guidelines set a minimum air temperature for paving of 40 °F. (Doc. 25 Ex. 2).

Under the terms of the contract, all preliminary grading work was to be completed by October 26, 2007. (Doc. 22 Ex. A at 2a). Gerken was required to finish all asphalt paving work no later than November 16, 2007, and the project was to be completed no later than December 3, 2007. (Id.). It was also required to warrant all of the completed work for a period of two years. (Id.). In the event a party wanted to modify the contract, including oral agreements to modify, the subcontractor was required to submit the changes to the contract, in writing, within five days of the modification. (Id. at 4). The contract allows the contractor to withhold payments if the subcontractor has breached any term of the contract or if there is a reasonable doubt that the subcontractor can complete the subcontract work. (Id. at 1). Finally, the contract specified that Owner paying LaSalle was a condition precedent to LaSalle's obligation to pay Plaintiff. (Id. at 2a).

    2. <u>2007 Paving Work</u>

The start of the project was delayed a number of weeks. Although Gerken employees believed the delay was due to unstable soil on the store grounds, the record

is not entirely clear regarding the reason for the delay. (Doc. 22 Ex. C pp. 61-63). However, neither LaSalle nor Gerken appear to be at fault. (Id.). As a result of the rumored soil problem, the grading of the lot was delayed, and consequently, Gerken was unable to begin the project until November 12, 2007, over two weeks after the project was supposed to start and only four days before Gerken was supposed to finish all of the asphalt paving under the terms of the contract. (Id.). Neither party amended the contract to reflect the later start date and there is no objection to the absence of a new timeline by either party.

Gerken began paving on November 12, 2007 and worked for the next three days, November 12, 13, and 14, in temperatures above the 40 °F required by the ODOT guidelines. (Doc. 25 Ex. 1). Despite the adequate weather conditions on those three days, Plaintiff exceeded its projected amount of asphalt by 162 tons on leveling and 254 tons on surface. (Doc. 22 Ex. D).

Gerken did not resume paving work on the project until November 28. (Doc. 22 Ex. H p. 32). Gerken employee John Yocum, the area manager, noted on November 27 that air temperature for parts of the next day, November 28, were forecasted to below the 40 °F requirement. (Doc. 22 Ex. C at 24-25). Yocum wrote a letter to Defendant letting them know that the temperature would be below ODOT guidelines, and warning that any paving done in conditions below 40 °F would prevent the asphalt from "achieving density and adhesion at the joints." (Doc. 22 Ex. K). Gerken also stated that it would not warrant any work that was completed when the air temperature was below 40 °F. (Id.). Yocum requested that LaSalle sign the bottom of the letter acknowledging that LaSalle wanted Plaintiff to proceed with paving despite the fact that

3

Plaintiff would not warrant any work performed in substandard air temperature conditions. (Id.). The letter did not mention asphalt overages. (Doc. 22 Ex. C at 25-26). Wes Gerecke, a LaSalle employee, signed the warranty waiver on November 27, releasing Plaintiff from warranting its paving work performed on November 28. (Id.). Virtually identical releases were prepared by Plaintiff and signed by Wes Gerecke or LaSalle employee A. L. Kershner for paving work performed on November 29, and 30, December 2, 5, 12, 14, and 15. (Id.). Gerken also claims they sent releases for December 3 and 4, but do not have copies of those alleged releases. (Doc. 24 at 4).

Defendant also signed two field directives on November 29, 2007 allowing an increase in the contract price for additional materials that were required due to "hidden conditions." (Doc. 25 Ex. 4 p. 1). LaSalle permitted a $2,000 increase in the contract price for additional asphalt to fix very specific area of the project. (Id. at 1). The amount was later increased to $4,000. (Id. at 2; Doc. 22 Ex. H p. 48). Both field directives refer to the same specific area of the project. (Doc. 25 Ex. 1 p. 5). The field directives on November 29, 2007 were the only two written and signed increases in the contract price for additional materials authorized by Defendant. Gerken asserts that LaSalle told its employees that LaSalle would no longer sign any additional field directives authorizing a price increase for additional materials. (Doc. 22 Ex. C at 69). However, Plaintiff also claims that LaSalle employees Tony Kirchner and Wes Gerecke instructed Gerken employees to keep paving despite the lack of written authorization, promising that Plaintiff would be paid for all overages at the end of the project. (Id.). Gerken employee Michael Zwyer's worksite notes mention a promise from LaSalle on November 30 and December 10 to pay costs of additional asphalt. (Doc. 25 Ex. 1 at 7, 10).

4

3. <u>Application for Increase in the Contract Price</u>

Plaintiff completed paving on the main portion of the project after thirteen days of work spanning from November 12 – December 15, 2007.  Plaintiff had not paved the outlot as required under the terms of the contract, claiming the cold weather prevented any further work.  (Doc. 22 Ex. C at 59).  On December 20, Gerken wrote LaSalle asserting that Gerken used substantially more asphalt to complete the job than anticipated in the contract price.  (Doc. 22 Ex. D).  Plaintiff incurred overages in asphalt every day of paving, including the three days in November when the weather was within the ODOT specifications.  (<u>Id.</u>).  Plaintiff did not hold Defendant responsible for overages incurred on those three days.  (<u>Id.</u>).  The overages incurred on cold weather days between November 29 - December 15, 2007 amounted to $57,916.76 in leveling overages and $36,931.92 in surface overages for a total of $94,848.68 in asphalt overages.  (<u>Id.</u>) Gerken did not expressly ask LaSalle to pay for the overages in the December 20 letter. LaSalle did not pay Gerken the overages.

Plaintiff did not do any further work for Defendant after December 15, 2007.  On March 26, 2008, Defendant wrote Plaintiff refusing to pay for the asphalt overages stating the parties had a fixed contract price.  (Doc. 22 Ex. I).  On June 3, 2008, over six months after Plaintiff first introduced the asphalt overages, Plaintiff sent a day-by-day accounting of the overages incurred on the project and requested payment from LaSalle.  (Doc. 25 Ex. 11).  Defendant did not pay Gerken the overages.

4. <u>The Outlot</u>

In Spring 2008, LaSalle contacted Gerken and demanded that Gerken complete the paving of the outlot and the punchlist items as required by the contract.  On May 23,

2008, Plaintiff responded that they could not pave the outlot unless Defendant agreed to a $7,442 price increase due to the increased cost of petroleum. (Doc. 25 Ex. 8). Defendant refused to pay the additional amount and on June 12, 2008 sent an email informing Plaintiff that if the outlot was not paved before that Monday, Owner would pave it at Plaintiff's expense. (Doc. 25 Ex. 9). Gerken never paved the outlot and LaSalle stated it had a third party pave the outlot at a cost of $24,880.00.

### 5. The Punchlist

Under the contract, Gerken was required to complete punchlist items prepared by LaSalle. (Doc. 22 Ex. A at 2a). The record is unclear regarding what punchlist items were requested and whether or not Plaintiff failed to complete them. Defendant simply claims that Plaintiff failed to complete the punchlist. (Doc. 22 at 6). Plaintiff claims that there were only two items on the punchlist, the first to fill in a crack in the asphalt and the second to fill in low spots in the asphalt. (Doc. 25 Ex. 12). It claims it does not have to repair the crack in the asphalt because LaSalle waived the warranty for that work. (Id.). It also claims it does not have to fill in the low spots in the asphalt because a third party, not Gerken, caused the damage to the pavement. (Id.).

### 6. Final Payment

Defendant paid Plaintiff $491,134.50 for the paving work, which was the full contract price ($545,705.00) less the 10% ($54,570.50) retainage (a common practice in the construction industry in which the contractor retains a certain percentage of the amount due to ensure that the remainder of the work is completed). (Doc. 22 at 6). LaSalle claims they withheld the retainage due to Gerken's failure to pave the outlot and complete the punchlist items.

6

### III. STANDARD OF REVIEW

Summary Judgment is appropriate only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The central inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court must lend credence to the non-moving party's interpretation of the disputed facts. Martin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1). There must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. Daimler Chrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

7

**IV. ANALYSIS**

Plaintiff filed a breach of contract complaint against Defendant for $143,014.56 in damages; $90,915.01 in asphalt overages and $52,099.55 in retainage fees. Defendant filed a motion for summary judgment contending A) Gerken is not entitled to the asphalt overages because it did not follow the terms of the contract to increase the contract price, and B) LaSalle is entitled to a portion of the retainage amount because Gerken failed to pave the outlot. The Court begins with the overages issue.

**A. Asphalt Overages**

The parties dispute whether Plaintiff followed the terms of the contract to increase the contract price and whether Plaintiff is therefore entitled to asphalt overages. The cardinal rule of contract interpretation is to ascertain the intent of the parties. The intent of parties is discerned from the agreement itself.

> [W]hen the language of an agreement leaves no doubt as to its meaning . . . it must be considered without regard to its extraneous facts. The intention of the parties is to be deduced from the language employed by them. The question is not what intention existed in the minds of the parties, but what intention was expressed in the language used; and where unambiguous, the terms of the [agreement] are conclusive.

Moore v. Kimball, 291 Mich. 455, 461 (1939), see also Quality Prods. & Concepts Co. v.Nagel Precision, Inc., 666 N.W.2d 251, 259 (Mich. 2003).

The court "must look for the intent of the parties in the words used in the instrument. The court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous. . . ." Mich. Chandelier Co. v. Morse, 297 N.W. 64, 67 (Mich. 1941).

> The Law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument.

Id. (quoting 12 AM.JUR. pp. 746-48).

"If the contract language is clear and unambiguous, its meaning is a question of law. Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist., 550 N.W.2d 228, 237 (1996). If a contract provision is clear and unambiguous, "the terms are to be taken and understood in their plain, ordinary, and popular sense." Clevenger v. Allstate Ins. Co., 505 N.W.2d 553, 557 (Mich. 1993). A contract which admits of but one interpretation is unambiguous. Fragner v. Am. Cmty.Mut.Ins. Co., 502 N.W.2d 350, 352 (Mich. Ct. App. 1993).

On the other hand, "[a] contract is ambiguous if 'its words may reasonably be understood in different ways.'" UAW-GM Human Res. Ctr. v. KSL Recreation Corp., 579 N.W.2d 411, 414 (1998) (quoting Raska v. Farm Bureau Ins. Co., 314 N.W.2d 440, 441 (Mich. 1982). If a contract is ambiguous, its meaning becomes a question of fact with the fact-finder trying to discern the parties' intent. Id. If any ambiguity exists in the contract, the Court may refer to extrinsic evidence to determine the intent of the parties, but any ambiguity in the language of the contract must be construed against its drafter. United Rentals (N.A.), Inc. v. Keizer, 355 F.3d 399, 409 (6th Cir. 2004). In interpreting a contract, the court should read the contract as a whole and arrive at a construction that will give fair meaning to all of the language employed by the parties. City of Wyandotte v. Consol. Rail Corp., 262 F.3d 581, 585 (6th Cir. 2001).

9

The paving contract explicitly required that any changes must be submitted in writing. The writing requirement was clearly stated at the beginning of the document (Doc. 22 Ex. A at 2 of 2) and affirmed again a number of times in § 5, which governed contract changes or claims. (Id. at 3-4 of 9). Specifically, § 5.4 states:

> Any claim for an increase in the Subcontract price or time for performance based upon **Contractor's written or verbal order**, or other act or omission of Contractor, Owner or A/E whether denominated as a change order or not, must be made by Subcontractor to Contractor, **in writing**, within five (5) days from the date of such claimed order, act or omission, or at such earlier date required by the Subcontract Documents but in any event prior to starting work involved in the claim; otherwise, the claim shall be barred.

(Doc. 22 Ex. A at 4 of 9) (emphasis added).

Section 5 requires a written request for any additional materials; Plaintiff never made a written request for more asphalt. Even if the Contractor makes the original request for additional materials orally, the Subcontractor is still required to submit written confirmation of the request within five days of the agreement. There is no exception in the contract to this requirement. Plaintiff claims that there is an exception contained in § 5.6 for time and material contracts. Gerken asserts that the November 29 field directive changed the contract from a fixed price contract to a time and material contract, and therefore Gerken did not need a written request for the additional work before that work started.

Plaintiff's assertion is incorrect for two reasons. First, the November 29 field directive did not change the contract from a fixed price contract to a time and material contract. The contract was for a fixed price. The existence of one very specific, relatively minor change in the terms does not transform the entire agreement from a fixed price contract to a time and material contract. The field directive was clear that the

2:10-cv-14905-MOB-RSW Doc # 28 Filed 07/30/12 Pg 11 of 13 Pg ID 435

time and material work was limited to the "board shed area which is from the catch basin line to 13 feet from the board shed . . . not to exceed $4,000." (Doc. 25 Ex. 4 at 2). This field directive was expressly limited in scope to a small area of the project and did not change the entire contract into a time and material contract. Moreover, the additional materials were required because a third party damaged the area, not because, as Plaintiff claims, the cold weather necessitated additional asphalt. Because the need for additional materials on November 29 was not caused by cold weather, Plaintiff's contention that Defendant knew other cold days would also require more time and material work is baseless.

Second, § 5.6 provides an exception to the requirement that a detailed pricing be submitted five days before the start of the work. It does not provide an exception to § 5.4, which requires the subcontractor to submit, in writing, any change based on the contractor's written or verbal order within five days of the start of the work. Section 5.6 states "If the work is to be performed on a time and material basis, this detailed pricing must be submitted within five (5) days from the completion of the work." (Doc. 22 Ex. A at 4). In time and material contracts, the only difference is that the subcontractor does not need to know or submit the detailed price of the additional work before that work begins. The section also states that "nothing in this paragraph effects or impacts any other paragraph of this agreement including, but not limited to, the requirement that all claims must be in writing." (Id.). Section 5.6 does not modify any requirement other than the timing of the detailed pricing.

Finally, Plaintiff was undeniably aware of the writing requirement and of the process for changing the contract. Gerken demonstrated this knowledge when it

complied with the change process on a number of occasions during its work on the project. First, Plaintiff sent ten separate letters to request, in writing, that Defendant release Plaintiff from warranting its work. Gerken failed to mention LaSalle's alleged oral promise to pay for additional material in any of these letters. Additionally, Plaintiff complied with the change procedures in § 5 when the parties agreed to the field directives on November 29, 2007. The parties noted that a third party had damaged an area of asphalt, agreed that additional materials were required to fix the damage, and issued a written confirmation of the decision to use additional materials. Plaintiff was clearly aware of the change procedures in the contract, including the writing requirement, because it correctly used those procedures on several occasions during the paving work. Despite this awareness, Plaintiff failed to submit a written request for asphalt overages in accordance with the parties' express agreement. It is therefore not entitled to recover those overages in this breach of contract action.

### B. Retainage

The parties disputed in their briefs whether LaSalle is entitled to withhold the entire 10% retainage amount after Gerken failed to pave the outlot. At the hearing, LaSalle changed its position and acknowledged that it owes Gerken the retention amount minus the cost of paving outlot, the cost of which LaSalle calculated to be $24,880.00. However, Defendant also contends that it is entitled to attorney fees, which would be taken out of the remaining retainage amount. This issue was not before the Court and it therefore makes no ruling on this matter. LaSalle has ten days from the date of this Opinion and Order to file a motion for attorney fees and it may withhold the retainage amount until this issue is resolved.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment. Further, LaSalle has ten days from the date of this Opinion and Order to file a motion for attorney fees.

**IT IS SO ORDERED.**

           s/Marianne O. Battani
           MARIANNE O. BATTANI
           UNITED STATES DISTRICT JUDGE


DATED: July 30, 2012


### CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

           s/Bernadette M. Thebolt
           Case Manager